## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**STEVAN RAJKOVIC,**                                    **Case No.**

    **Plaintiff,**                                    **Hon.**

**-vs-**                                                        **Magistrate**

**THE UNIVERSITY OF MICHIGAN,**

    **Defendant.**

_____/

**COUZENS, LANSKY, FEALK, ELLIS,**
 **ROEDER & LAZAR, P.C.**
**By:   David A. Lawrence (P48630)**
      **Prerana R. Bacon (P69680)**
**Attorneys for Plaintiff**
**39395 W. Twelve Mile Rd., Suite 200**
**Farmington Hills, MI 48331**
**(248) 489-8600**
david.lawrence@couzens.com
prerana.bacon@couzens.com
_____/

## **COMPLAINT AND JURY DEMAND**

NOW COMES Plaintiff, Stevan Rajkovic ("Stevan"), by and through his undersigned counsel, and brings this Complaint against Defendant, the University of Michigan, its employees, agents, and successors in office ("Defendant"), and in support thereof, alleges the following:

COUZENS, LANSKY, FEALK, ELLIS, ROEDER & LAZAR, P.C.

1

## **INTRODUCTION**

1.     This case seeks to protect and vindicate statutory and fundamental constitutional rights. Stevan brings this civil rights action under the First and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983, and for other statutory and constitutional violations, challenging Defendant's acts, policies, practices, customs, and procedures, which deprived Stevan of his First Amendment rights, his right to Due Process, and his Fourteenth Amendment liberty right to privacy, self-autonomy and personal identity, including the right to reject public employer mandated medical treatment.

2.     Defendant unjustly discriminated against Stevan because of his sincerely held religious beliefs by refusing to provide any accommodation for his request for religious exemption from certain of Defendant's COVID-19 policies; placing him on several unpaid leaves, the last of which was for thirty days, to coerce him to violate his sincerely held religious beliefs; and then terminating him when he would not.

3.     In short, Defendant's policies punished Stevan for exercising his constitutionally and statutorily protected rights to make his own medical decisions consistent with his faith and in consultation with his doctor.

4.     Defendant's policies sought to override Stevan's sincerely held religious beliefs and viewpoint and discriminated against him on the basis of his religion.

2

5.     As set forth in this Complaint, Defendant's policies, practices, customs, and procedures were the cause of, and the moving force behind, the statutory, and constitutional violations in this case.

6.     Stevan seeks:

a.  a declaration that Defendant violated his clearly established statutory and constitutional rights;

b.  a declaration that Defendant's policies, practices, customs, and procedures as set forth in this Complaint violated the United States Constitution and the Michigan Constitution;

c.  a finding that Defendant's actions violated state and federal anti-discrimination laws;

d.  reinstatement of employment and benefits with lost wages;

e.  real and compensatory damages; and

f.  an award of his reasonable costs of litigation, including attorneys' fees and costs, pursuant to 42 U.S.C. §1988 and other applicable law.

## JURISDICTION AND VENUE

7.     This action arises under the Constitution and laws of the United States and of the State of Michigan. Jurisdiction is conferred on this Honorable Court pursuant to 28 U.S.C. § 1331 and 1343, as well as under 42 U.S.C. § 2000a, *et seq.,* and 42 U.S.C. § 1983, and other Federal and State laws and regulations, to redress violations of federal and state statutes.

8.     This Honorable Court has jurisdiction pursuant to Article III of the United States Constitution, 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a). Declaratory

COUZENS, LANSKY, FEALK, ELLIS, ROEDER & LAZAR, P.C.

relief is authorized pursuant to 28 U.S.C. § 2201 and 2202, Rules 57 and 65 of the Federal Rules of Civil Procedure, and by the general legal and equitable powers of this Honorable Court.

9.     This Honorable Court has supplemental jurisdiction over the remaining state claims pursuant to 28 U.S.C. § 1367.

10.     Stevan's claims for damages are authorized under 42 U.S.C. § 1983, 42 U.S.C. § 2000d-7, and by the general legal and equitable powers of this Honorable Court.

11.     Venue is proper under 28 U.S.C. § 1391(b) because Defendant is located in this District and a substantial part of the events or omissions giving rise to Stevan's claims occurred in this District.

## THE PARTIES

12.     Plaintiff Stevan Rajkovic is a resident of Oakland County, Michigan.

13.     Stevan, who is Serbian Orthodox, was employed by Defendant The University of Michigan as an MiWorkspace Neighborhood IT Desktop Support Specialist (Information & Technology Services)[1] from August 2021 until he was terminated on May 2, 2022, after Defendant failed to provide Stevan with any

---

[1] MiWorkspace is a desktop support service that supports University of Michigan employee devices by providing software and security updates, printing, and access to a team of desktop support professionals. https://its.umich.edu/miworkspace/about.

4

accommodations for his request for religious exemption from certain of Defendant's COVID-19 policies.

14.     Defendant The University of Michigan is a public university organized and existing under the laws of the State of Michigan.

15.     Defendant operates within this District, and at all times relevant, Defendant acted, and continue to act, under color of state law.

16.     Defendant and its officials are responsible for creating, adopting, approving, ratifying, and enforcing the policies, practices, customs and procedures of The University of Michigan, including the challenged policies, practices, customs, and procedures set forth in this Complaint.

## COMMON FACTUAL ALLEGATIONS

### Stevan's Sincerely-Held Religious Beliefs

17.     Stevan is a Serbian Orthodox and parishioner of St. Lazarus Serbian Orthodox Cathedral "Ravanica" and believes that all medical treatment and tests upon his body are to be decided by Stevan, God, and Stevan's physician, only. Stevan finds his dignity, personal identity, and autonomy in the exercise of his sincerely held Serbian Orthodox religious beliefs.

18.     Stevan sincerely believes that human beings have a duty to God to live their lives according to His Word.

5

19.     Stevan does not oppose or demean others for the personal medical decisions they make for themselves. However, Stevan opposes the medical mandates which were forced upon him by Defendant, and the resulting violation of Stevan's statutory and constitutional rights.

20.     As a devoted Serbian Orthodox, Stevan sincerely believes his religious teachings and sincerely holds his religious beliefs which precluded him from complying with Defendant's mandatory weekly COVID-19 testing.

**Defendant's COVID-19 Policies**

21.     In preparation for the return of faculty, staff and students for the fall 2021 term, on July 30, 2021, Defendant and its officials announced that all University faculty, staff and students were required to be vaccinated against COVID-19 and to submit their vaccination information by August 30, 2021 (the "Vaccination Policy").[2]

22.     On December 17, 2021, Defendant and its officials announced that COVID-19 booster shots would now also be required for all faculty, staff and

---

[2] https://president.umich.edu/news-communications/letters-to-the-community/covid-19-vaccination-requirement/

6

students under the aforementioned Vaccination Policy due to emergence of the Omicron variant.[3]

23.    The deadline for compliance with the booster requirement for the Ann Arbor campus where Stevan worked was February 4, 2022 "or as soon as [the individual] was eligible thereafter, based on [the individual's] vaccination schedule.[4]

24.    Under the Vaccination Policy and at all times relevant hereto, Defendant offered to provide "limited exemptions" to its Vaccination Policy for medical and religious reasons. The following is posted on Defendant's Campus BluePrint website regarding medical or religious exemptions:

> The University of Michigan is providing limited exemptions to the vaccination requirement for medical or religious reasons....Those requesting a medical exemption must provide an explanation of the medical conditions that would make it unsafe to receive the COVID-19 vaccine, such as a documented history of a severe allergic reaction to any component of the vaccine. The request must include documentation from a health care provider in support of the request. Any request without documentation will be declined. Those seeking a religious exemption are asked to explain why their "sincerely held religious belief" precludes them from receiving the COVID-19 vaccine. While documentation is not required, the university is asking those requesting this exemption to include any supporting documentation that is relevant

---

[3] https://president.umich.edu/news-communications/letters-to-the-community/campus-covid-19-update-winter-term-safety-case-update-omicron-variant/

[4] https://record.umich.edu/articles/u-m-to-require-covid-19-booster-updates-winter-term-plans/

to the request, such as an additional written statement or written information provided by a religious or spiritual leader.[5]

*See also,* University of Michigan COVID-19 Vaccination Policy updated 1-11-22, attached as **Exhibit A**.

25.     Under the Vaccination Policy, individuals approved for a religious or medical exemption must undergo weekly COVID-19 testing. (University of Michigan COVID-19 Vaccination Policy updated 1-11-22, **Exhibit A**).

26.     Defendant's Vaccination Policy provides for no religious or medical exemption from the weekly COVID-19 testing.

**Stevan's Employment with Defendant The University of Michigan**

27.     Stevan interviewed for the MiWorkspace Neighborhood IT Desktop Support Specialist and was extended an offer of employment on August 19, 2021.

28.     As a condition of his employment, and pursuant to Defendant's Vaccination Policy in the summer of 2021, Stevan was required to either (1) provide proof of vaccination or (2) request a medical or religious exemption.

29.     Stevan's mother is ill and immunocompromised.  In the summer of 2021, the government (falsely) advised that getting a vaccine would prevent a person from getting or transmitting COVID-19.  Accordingly, Stevan, in consultation with

COUZENS, LANSKY, FEALK, ELLIS, ROEDER & LAZAR, P.C.

---

[5] https://campusblueprint.umich.edu/faqs/#how-request-exemption-religious-medical-header

God and his physician, got vaccinated and submitted proof of vaccination on September 7, 2021.[6]

30.     After Defendant revised the Vaccination Policy on December 17, 2021 (now requiring all faculty, staff and students to be boosted by February 4, 2022), Stevan submitted a request for a medical exemption from the COVID-19 booster with supporting documentation from his Primary Care Physician, Ronald F. Grose, M.D., based upon well documented cardiac risks associated with the vaccines and boosters. (Letter, **Exhibit B**).

31.     On March 7, 2022, Stevan received an automated email from Booster Exemptions and Temporary Postponement approving his request for exemption. (3-7-22 Exemption Approval Email, **Exhibit C**).

32.     On March 7, 2022, Stevan advised his manager, Vlad Miskevich, that he would not be undergoing the weekly COVID-19 testing.

33.     On March 8, 2022, Stevan similarly advised RaShan M. Duckworth, Human Resources Senior Business Partner. (3-8-22 Email, **Exhibit D**).

34.     In response, Ms. Duckworth simply copied and pasted questions and answers from the Campus BluePrint website and stated: "I just wanted to make sure

COUZENS, LANSKY, FEALK, ELLIS, ROEDER & LAZAR, P.C.

---

[6] Stevan received the first two COVID-19 shots following consultation with his personal physician and religious leaders based on his understanding that the vaccines would protect his mother, who has Parkinson's Disease and is immuno-comprised, from contracting COVID-19.

that I provided that information to you. Please let me know if you have any questions." (3-8-22 Email, **Exhibit D**).

35.     On March 10, 2022, when Stevan did not undergo COVID-19 testing, he received a verbal warning and "Verbal warning follow up" from his manager informing him that he was being suspended from work for nine (9) calendar days without pay. (3-10-22 Miskevich Email, **Exhibit E**). Stevan was forbidden from returning to the office until March 21, 2022 unless he took a "mandatory test and provide[d] a test confirmation" demonstrating compliance with Defendant's Vaccination Policy before that date. Stevan was also told that failure to comply with Defendant's Vaccination Policy would result in a written warning and another suspension from work without pay.

36.     On March 21, 2022, when Stevan returned to the office without being tested, he received a "Written warning" from his manager. (3-21-22 Miskevich Email, **Exhibit F**). Stevan was again suspended without pay for an additional nine (9) days and told he must comply with the mandatory testing requirement in order to return. Stevan's manager also threatened a thirty-day unpaid suspension in the event he remained non-compliant with Defendant's Vaccination Policy. Stevan's manager advised there were only two ways to comply: (1) take the COVID-19 booster (for which Stevan had already obtained a medical exemption) or (2) undergo weekly

10

testing. If Stevan remained non-compliant, according to Mr. Miskevich, Stevan would eventually be terminated.

37.     On April 1, 2022, Stevan was placed on the thirty-day suspension, without pay, for refusing to test.

38.     That same day, Stevan emailed Ms. Duckworth seeking clarification regarding the weekly COVID-19 testing. Ms. Duckworth again simply pointed Stevan to another series of FAQs from the Campus BluePrint website. (4-1-22 Email String, **Exhibit G**).

39.     On April 5, 2022, Stevan emailed Ms. Duckworth about submitting and obtaining a religious and/or medical exemption from the weekly testing. Rather than answer Stevan's question, Ms. Duckworth simply reiterated the weekly COVID-19 testing requirement under Defendant's Vaccination Policy and informed Stevan that since he obtained a medical exemption from boosting, he was "still required to test weekly".  When Stevan again asked about exemptions from testing, Ms. Duckworth responded that **no such exemptions existed**. (4-5-22 Email String, **Exhibit H**).

40.     On April 14, 2022, Stevan submitted requests for medical and religious exemptions from the weekly testing to Ms. Duckworth. In support, he attached letters from Dr. Grose and his religious leader, Reverend Father Aleksander Vujkovic, the Cathedral Dean of Stevan's church. (Exemption Letters, **Exhibit I**).

11

COUZENS, LANSKY, FEALK, ELLIS, ROEDER & LAZAR, P.C.

41.   The next day, April 15, 2022, Ms. Duckworth advised Stevan Defendant's "COVID-19 HR team" had denied his requests. She included a quote from the team's response:

> "Employees with approved exemptions are still required to engage in weekly testing or if working mostly remotely, on those occasions when they come to campus and/or interact with others as a part of their work….There are no exceptions to this testing policy."

(4-15-22 Duckworth Email, **Exhibit J**). In other words, **t**he Defendant refused to even consider Stevan's request for a religious exemption.

42.   On May 1, 2022, the expiration of Stevan's 30-day suspension, Stevan contacted Ms. Duckworth again to confirm that (1) Defendant's mandatory testing policy had not changed and (2) Defendant's previous denial of his religious exemption still stood.

43.   On May 2, 2022 at 8:17 AM, Ms. Duckworth confirmed Defendant's policy had not changed. (May 2022 Confirming Emails, **Exhibit K**).

44.   Later that morning, at 10:15 AM, Stevan's manager sent a Termination Notice to Stevan at his employment email address indicating that since Stevan had "**not complied with the university's COVID-19 vaccination policy**", Stevan's employment "**is therefore terminated effective May 1, 2022**".  The termination notice also stated that Stevan was "**not eligible for rehire** due to failure to comply with the university's COVID-19 testing requirements". (5/2/22 Termination Notice, **Exhibit L**).

12

## COUNT I - VIOLATION OF FIRST AMENDMENT; 42 U.S.C. §1983

45.    Stevan hereby incorporates by reference paragraphs 1 through 44 as if fully restated herein.

46.    By reason of the aforementioned acts, policies, practices, customs and procedures created, adopted, and enforced under color of state law, Defendant deprived Stevan of his right to the free exercise of his sincerely held religious beliefs in violation of the First Amendment, as applied to the states and their political subdivisions under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

47.    Defendant violated Stevan's First Amendment right to freely exercise his religious beliefs by mandating weekly COVID-19 testing which substantially interfered with Stevan's religious free exercise rights.

48.    Defendant's policies violate the First Amendment by punishing Stevan and any faculty, staff and student who exercises their religious beliefs in connection with their personal medical decisions.

49.    Stevan's compliance with his sincerely held religious beliefs is a religious exercise.

50.    Defendant's policies and practices are not general laws as they specifically target any faculty, staff and student who sincerely hold religious views.

51. By design, Defendant's exemption denials, policies and practices are imposed on any faculty, staff and student seeking to practice their faith and/or religion but not on others, resulting in unjust religious discrimination.

52. Defendant's policies and practices further no compelling governmental interest as they directly violated Stevan's First Amendment rights to free exercise of religion.

53. Defendant's policies and practices fail to provide the least restrictive means of furthering any stated interest and are not narrowly tailored.

54. Defendant's policies and practices created government-imposed, coercive pressure on Stevan to change or violate his sincerely held religious beliefs in order to remain gainfully employed.

55. Defendant's policies, practices, customs, and procedures, punish and impose discipline on any faculty, staff, and student for exercising his or her right to free exercise of their religious beliefs. Defendant's actions injured Stevan by chilling his religious activity and religious speech through (1) threat of discipline and sanction for failing to comply with Defendant's policies and (2) termination of Stevan's employment when Stevan refused to change or violate his sincerely held religious beliefs.

14

56.     As a direct and proximate result of Defendant's violation of the First Amendment, Stevan suffered the loss of his fundamental constitutional rights, entitling him to declaratory relief and damages for the loss of those rights.

### COUNT II - VIOLATION OF 42 U.S.C. §1983 (DUE PROCESS)

57.     Stevan hereby incorporates by reference paragraphs 1 through 56 as if fully restated herein.

58.     Acting under color of law, Defendant promulgated, adopted and carried out the aforementioned acts, policies, practices, customs and procedures intentionally and deliberately, with wanton and reckless disregard for Stevan's civil and constitutional rights, privileges and sensibilities, including the fundamental right to due process of law and other applicable provisions of the United States Constitution.

59.     By promulgating and carrying out the policies, orders and directives above, Defendant unlawfully violated Stevan's constitutional rights.

60.     Stevan enjoyed a constitutionally protected property interest in continued employment.

61.     Before depriving Stevan of his constitutionally protected property interest in continued employment, Defendant did not conduct any meaningful consideration of his request for religious exemption from Defendant's Vaccination Policy, simply denying on the basis that there were **"no exceptions"** to the mandatory testing. Defendant did not even consider the request for a religious

15

exemption and Stevan was never given any meaningful opportunity to respond to the denial.

62.     Defendant's actions in depriving Stevan of his constitutionally protected property interest in continued employment absent any opportunity to respond to the denial abridged his right to due process of law in violation of the Fourteenth Amendment to the United States Constitution.

63.     Stevan's reputation and his opportunity to pursue future employment constitute a constitutionally protected liberty interest.

64.     Defendant's actions in depriving Stevan of his constitutionally protected liberty interest in his reputation and his opportunity to pursue future employment by terminating him without an opportunity to respond abridged her right to due process of law in violation of the Fourteenth Amendment to the United States Constitution.

65.     At all times hereto, Stevan had a clearly established right to due process of law of which Defendant would or should have known.

66.     As a direct and proximate result of Defendant's wrongdoing, Stevan has sustained loss of earnings and earning capacity, past and future lost earnings, loss of job and career opportunities, damage to his good name and reputation in the community, and the loss to pursue employment of his choice.

67.     As a direct and proximate result of Defendant's wrongdoing, Stevan suffered the loss of his fundamental constitutional rights, entitling him to declaratory relief and damages for the loss of those rights.

**COUNT III - VIOLATION OF TITLE VII**

68.     Stevan hereby incorporates by reference paragraphs 1 through 67 as if fully restated herein.

69.     Title VII/42 U.S.C. § 2000e-2(a) states: "It shall be an unlawful employment practice for an employer (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin."

70.     Defendant The University of Michigan is an employer covered by, and required to comply with, Title VII.

71.     Stevan holds a sincere religious belief that conflicted with, and prevented him from complying with, Defendant's mandatory COVID-19 testing policy.

72.     Stevan notified Defendant of his sincere religious belief that conflicted with, and prevented him from complying with, Defendant's mandatory COVID-19 testing policy and requested an exemption on that basis.

73.     Stevan was not offered any accommodations in response to his religious exemption request, and instead, was subsequently terminated for failing to comply with Defendant's mandatory COVID-19 testing policy.

74.     Defendant discriminated against Stevan by: (1) suspending his employment without pay for forty-eight (48) days on the basis of his religious beliefs; (2) terminating his employment on the basis of his religious beliefs; (3) effectively subjecting Stevan to discrimination on the basis of those religious beliefs; (4) excluding or denying equal jobs to Stevan because of his religious beliefs; and (4) failing to otherwise accommodate Stevan's request.

75.     Furthermore, Defendant **refused to even consider Stevan's religious exemption request and simply denied the request on the basis that there are "no exceptions to this testing policy"**. After failing to accommodate Stevan's request, Defendant subsequently terminated Stevan's employment for failing to comply with Defendant's Vaccination Policy. Such actions and conduct demonstrate a clear reckless and callous indifference for Stevan's federally protected rights, thereby entitling Stevan to punitive damages under 42 U.S.C. § 1981a(b)1.

COUZENS, LANSKY, FEALK, ELLIS, ROEDER & LAZAR, P.C.

## <u>COUNT IV - VIOLATION OF MICHIGAN CONSTITUTION</u>

76.     Stevan hereby incorporates by reference paragraphs 1 through 75 as if fully restated herein.

77.     By reason of the aforementioned acts, policies, practices, customs and procedures created, adopted, and enforced under color of state law, Defendant deprived Stevan of his right to freely exercise his religion under Michigan's Constitution of 1963 a by violating Article I, §4 of the Michigan Constitution.

78.     Defendant's policies, for all the reasons as stated above, denied Stevan the right and "liberty to worship God according to the dictates of his own conscience," and further "diminishe[d Stevan's] civil and political rights, privileges and capacities" on account of his religious belief.

79.     Defendant's policies, practices, customs, and procedures, punish and impose discipline on any faculty, staff, and student for exercising his or her state constitutional rights as stated above. Defendant's actions injured Stevan by chilling his constitutionally-protected activity through (1) threat of discipline and sanction for failing to comply with Defendant's policies and (2) termination of Stevan's employment when Stevan refused to change or violate his sincerely held religious beliefs.

80.     As a direct and proximate result of Defendant's violation of the state constitutional provision specified above, Stevan suffered the loss of his fundamental

19

constitutional rights, entitling him to declaratory relief and damages for the loss of those rights.

## COUNT V - VIOLATION OF ELLIOTT-LARSEN CIVIL RIGHTS ACT

81. Stevan hereby incorporates by reference paragraphs 1 through 80 as if fully restated herein.

82. Defendant The University of Michigan is an employer as defined by Michigan's Elliott-Larsen Civil Rights Act ("ELCRA"), MCL 37.2201(a).

83. Stevan is a person and an employee as defined by the ELCRA.

84. Stevan is entitled to protection of the ELCRA on the basis of his religion to wit his religious faith precluded him from complying with Defendant's COVID-19 policies.

85. Stevan was subjected to disparate treatment in the terms and conditions of his employment on the basis of religion, including, but not limited to, matters of discipline and discharge.

86. Defendant, by and through its agents, servants and/or employees, intentionally discriminated against Stevan because of his religious beliefs.

87. Defendant's discharge of Stevan from his position due to his religious faith and belief which conflicted with Defendant's Vaccination Policy violated the prohibitions against such discrimination contained in MCL 37.2102(1).

88. Defendant, by and through its agents, servants and employees, intentionally discriminated against Stevan on account of his religious beliefs in violation of ELCRA MCL 37.2101, *et seq*., by the following acts:

    a. limiting, segregating and/or classifying Stevan in a way which deprived or tended to deprive him of an employment opportunity or otherwise adversely affecting his status because of religion;

    b. segregating, classifying and/or otherwise discriminating against Stevan on the basis of religion with respect to a term, condition, or privilege of employment, including a benefit plan or system;

    c. terminating and/or otherwise discriminating against Stevan with respect to his employment, compensation or a term, condition, or privilege of employment, because of religion; and

    d. Failing to provide a work environment free from religious discrimination.

89. As a direct and proximate result of Defendant's violation of ELCRA, Stevan has suffered economic and non-economic losses, and has been placed in financial distress and has suffered a loss of earnings and benefits, a loss and impairment of his earning capacity and ability to work, and will so suffer in the future.

## COUNT VI - WRONGFUL DISCHARGE

90. Stevan hereby incorporates by reference paragraphs 1 through 89 as if fully restated herein.

91. An individual has a cause of action for wrongful discharge when the discharge is contrary to a fundamental and well-defined public policy as evidenced by existing law.

COUZENS, LANSKY, FEALK, ELLIS, ROEDER & LAZAR, P.C.

92.    Public policy will preclude an employer from terminating an at-will employee when: (1) the employee is discharged in violation of an explicit legislative statement prohibiting discharge of employees who act in accordance with a statutory right or duty; (2) the employee is discharged for the failure or refusal to violate the law in the course of employment; or (3) the employee is discharged for exercising a right conferred by a well-established legislative enactment. *McNeil v. Charlevoix Co*, 484 Mich. 69, 79; 772 N.W.2d 18 (2009)(internal citations omitted).

93.    It "could be possible for a public policy to be based on principles derived from authoritative sources other than statutes." *Vagts v. Perry Drug Stores, Inc.*, 204 Mich. App. 481, 485-486; 516 N.W.2d 102 (1994). For example, the "law" "may include those principles promulgated in constitutional provisions, common law, and regulations as well as statutes." *Id*. at 485.

94.    As set forth above, Defendant discharged Stevan on the basis of his religious observance and practice and after refusing to provide any accommodation in response to his request for a religious exemption from COVID-19 testing.

95.    As such, Defendant's termination of Stevan's employment was wrongful, entitling Stevan to damages.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Stevan asks this Honorable Court to:

A.    Declare that Defendant's Vaccination Policy which provides no religious accommodations for the COVID-19 testing is invalid and unconstitutional for all the reasons as set forth in this Complaint;

B.    Declare that Defendant acted unconstitutionally, outside its authority, and in an *ultra vires* manner as set forth in this Complaint;

C.    Declare that Defendant violated Stevan's fundamental constitutional rights as set forth in this Complaint;

D.    Declare that Defendant violated Stevan's statutory rights as set forth in this Complaint;

E.    Declare that Defendant's Vaccination Policy which provides no religious accommodations for the COVID-19 testing violates Michigan's Constitution and the Elliott-Larsen Civil Rights Act for all the reasons as stated above;

F.    Award Stevan reinstatement of employment with benefits and lost wages;

G.    Award Stevan real and compensatory damages, including back pay and front pay;

H.    Award Stevan his reasonable attorney fees, costs and expenses pursuant to 42 U.S.C. § 1988, Title IX, and other applicable law; and

I.    Grant such other and further relief as is just and appropriate.

23

COUZENS, LANSKY, FEALK, ELLIS,
 ROEDER & LAZAR, P.C.


By:**/s/ David A. Lawrence**
     **David A. Lawrence (P48630)**
     **Prerana R. Bacon (P69680)**
**Attorneys for Plaintiff**
**39395 W. Twelve Mile Road, Suite 200**
**Farmington Hills, MI  48331**
**(248) 489-8600**
**david.lawrence@couzens.com**
**prerana.bacon@couzens.com**

**Dated:  May 10, 2022**


## JURY DEMAND

Pursuant to Fed. R. Civ. Pro. 58, Plaintiff Stevan Rajkovic hereby demands a

trial by jury in this action of all issues so triable.


COUZENS, LANSKY, FEALK, ELLIS,
 ROEDER & LAZAR, P.C.


By:**/s/ David A. Lawrence**
     **David A. Lawrence (P48630)**
     **Prerana R. Bacon (P69680)**
**Attorneys for Plaintiff**
**39395 W. Twelve Mile Road, Suite 200**
**Farmington Hills, MI  48331**
**(248) 489-8600**
**david.lawrence@couzens.com**
**prerana.bacon@couzens.com**

**Dated:  May 10, 2022**